# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JUSTIN D. MARTY<br><br>        Plaintiff,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, PROVIDENT FUNDING ASSOCIATES, JAMES H. WOODALL, WELLS FARGO BANK, FEDERAL HOME LOAN MORTGAGE CORPORATION<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:10-cv-00033-CW<br><br>Judge Clark Waddoups |

## **INTRODUCTION**

This case comes to the district court on removal from state court by Defendant Federal Home Loan Mortgage Corporation ("FHLMC"). In his complaint, Plaintiff alleges that the nonjudicial foreclosure proceeding brought against the property at issue was improper for a variety of reasons, as discussed *infra*. Plaintiff's central argument is that when the notes were allegedly securitized, there was necessarily a separation of the note from the trust deed securing the property. The effect of this securitization, according to Plaintiff, was to strip the trust deed from its holder and any authority to appoint the substitute trustee, James Woodall. Thus, Plaintiff contends that the foreclosure process conducted by Mr. Woodall was improper. The court finds that this and all of Plaintiff's other arguments are without merit. Defendants' motions pertaining to each of the four causes of action, as stated below, are granted.

1

**FACTUAL BACKGROUND**

Plaintiff, Justin D. Marty, purchased property located at 865 East Eaglewood Drive in Davis County by warranty deed dated February 9, 2007 and executed a promissory note in favor of Provident Funding on February 15, 2007 (the "Provident Funding Note") secured by a deed of trust ("First Trust Deed").[1] On February 21, 2007, First American Title Company, as trustee, recorded the First Trust Deed in the Davis County recorder's office with Mortgage Electronic Registration Systems ("MERS") designated as the beneficiary under the terms of the trust, but solely as nominee for the lender, Provident Funding.[2] On Plaintiff's information and belief, MERS then securitized the note and sold it to investors.[3] On June 11, 2009, MERS appointed James Woodall as substitute trustee and, on the same date, assigned all the beneficial interest under the First Trust Deed to Provident Funding.[4] Mr. Woodall served the Notice of Default and Intent to Sell on June 12, 2009.[5] MERS officially recorded the substitution of trustee, appointing Mr. Woodall as trustee, on June 15, 2009.[6] On the same day, MERS recorded the assignment of its beneficial interest to Provident Funding.[7] Mr. Woodall later posted a Notice of Trustee's Sale on the property on September 19, 2009, and the sale was held on October 20, 2009.[8] On November 24, 2009, FHLMC, as grantee, recorded its interest in the property.[9]

Plaintiff executed a second note in favor of Wells Fargo (the "Wells Fargo Note") on October 18, 2007, also secured by a deed of trust (the "Second Trust Deed").[10] The Second

---

[1] (Compl., ¶ 10-11); (Compl., Ex. A).
[2] (Compl., ¶¶ 10, 13); (Compl., Ex. B).
[3] (Compl., ¶¶ 20-24).
[4] (Compl., ¶¶ 30-31; Ex. E, F).
[5] (Compl., ¶ 29). During the hearing on these motions held September 16, 2010, Plaintiff's counsel conceded Plaintiff is and has been in default on his loans.
[6] (Compl., ¶ 30).
[7] (Compl., ¶ 31).
[8] (Compl., ¶¶ 32-33).
[9] (Compl., ¶¶ 34-35).
[10] (Compl., ¶ 16).

Trust Deed was conveyed to Wells Fargo Bank NorthWest as trustee on the same day, naming Wells Fargo Bank, N.A. as beneficiary.[11] Plaintiff contends that on information and belief, this note was also securitized and sold to investors.[12] Based on the evidence submitted, however, the court finds that the Wells Fargo Note was at all times retained by Wells Fargo and was never otherwise conveyed or securitized.[13]

## DISCUSSION

### I. STANDARD FOR A MOTION TO DISMISS

When evaluating a motion to dismiss under Rule 12(b)(6), the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."[14] The court need not, however, consider allegations which are conclusory, or that "do not allege the factual basis" for the claim.[15] Moreover, the court is not bound by a complaint's legal conclusions, deductions, and opinions couched as facts.[16]

Although all reasonable inferences must be drawn in the non-moving party's favor, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face."[17] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18] Under this standard, a claim need not be probable, but there must be facts showing more than a "sheer possibility" of wrongdoing.[19]

---

[11] (Compl., ¶ 17).
[12] (Compl., ¶ 20-24).
[13] *See* Second Ryan Dec. (Dkt. No. 31).
[14] *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).
[15] *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.")
[16] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).
[17] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).
[18] *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).
[19] *Id.*

## II. FIRST CAUSE OF ACTION – ESTOPPEL/DECLARATORY JUDGMENT

Plaintiff claims that Defendants should be estopped "[from asserting] any present default on the Notes, or power of sale under the Trust Deeds" because the servicers failed "to disclose the interests of such assignees as necessary to protect such interests."[20] Plaintiff's estoppel claim presumably applies to all Defendants because of the alleged agency relationship that apparently exists between them and the servicers.[21]

Under Utah law, three elements are required to prove equitable estoppel:

> [F]irst, "a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted"; next, "reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act or failure to act"; and, third, "injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act."[22]

No claim is made that Defendants acted or failed to act inconsistently with a claim later asserted, that Plaintiff relied on a statement of Defendants, or that injury arose from a contradiction or repudiation of any such statement or action. Rather, Plaintiff simply alleges that a demand for information was made and that Defendants failed to respond. Plaintiff fails to allege any facts that could feasibly fit within the estoppel framework. Therefore, this cause of action is dismissed in favor of all Defendants.

## III. SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT

### A. **Moving Defendants' Motion to Dismiss Claims Regarding the Provident Funding Note**

Plaintiff's claims, and the logic behind them, have been vague from the outset and have continued to be vague through the course of this litigation. Plaintiff has contrived creative theories throughout the briefing and continued to provide new arguments during the hearing

---

[20] (Compl., ¶¶ 37- 41).
[21] *Id.*
[22] *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶14, 158 P.3d 1088.

before the court. Plaintiff has also referenced multiple cases in either his briefing or before the court, which he asserts prove his point without a clear articulation of their relevancy. By failing to precisely identify and explain how such cases support his action, the court and Defendants have been left to wonder, on a number of occasions, how Plaintiff intended to bolster his many, evolving theories.[23]

That being said, the crux of Plaintiff's claim appears to be that Defendants did not have the authority to foreclose on the property at issue because the sale of the notes during the alleged securitization process necessarily caused a simultaneous transfer of the trust deeds. Plaintiff seems to argue that the result is two-fold: (1) that the foreclosure was improper because "no transferee . . . has recorded a copy of any security agreement providing any security interest in either [of the trust deeds], in order to perfect any right of enforcement [under state law];"[24] and (2) that "the transfer of the debt . . . to unknown buyers of [mortgage backed securities], has rendered the trust deed unenforceable by named defendants" because the holder of the trust deed is necessarily the transferee of the note.[25] Plaintiff has also challenged MERS's standing as a party of interest in this case and has raised the contention that Utah Code Ann. § 57-1-22(3)(a) somehow supports the notion that the trust deed at issue is ineffective. The court will consider each argument in turn and finds for all Defendants on their respective motions.

---

[23] As is pointed out in various examples *infra*, some of Plaintiff's arguments are not particularly lucid or narrowly crafted. Rather, several of them appear carelessly included, at best, or purposefully used to delay. Combined with the fact that Plaintiff has admitted that he is in default, it is difficult to imagine Plaintiff's action is grounded in anything other than bad faith. Plaintiff has offered nothing, legal conclusions aside, which suggests that he has any real right to the property at issue. As such, Plaintiff must be keenly aware that to delay any change in the status quo would continue to provide him "something for nothing" to the injury of another. Although the court does not find that Plaintiff's counsel promulgated a frivolous case, it is difficult to presume that this action was anything more than a disingenuous attempt to stall the result of a foreclosure proceeding. Such an action, if true, is inappropriate. The court, as well as the other parties involved, has spent significant resources in wading through Plaintiff's confusing briefing and wasted much time in trying to determine whether Plaintiff has suffered a genuine injury. The court admonishes counsel to be more thoughtful and discriminating in his arguments, and to be aware that there will be little toleration for future abuses of our justice system.
[24] (Compl., ¶ 25).
[25] (Pl.'s Mem. in Resp. to Wells Fargo's Mot. to Dismiss, 3).

### i. Recording of the Security Agreement Requirement

Plaintiff contends that "no transferee [of the obligations under the notes] has recorded a copy of any security agreement providing any security interest in either [of the notes] in order to perfect any right of enforcement" under Utah Code Ann. § 70A-9a-607(1)-(2).[26] The relevant language of the code provides that if it is "necessary to enable a secured party to exercise . . . the right of a debtor to enforce a mortgage nonjudicially, the secured party *may* record . . . [a copy of the security agreement, and the secured party's sworn affidavit stating that a default has occurred and that the secured party is entitled to enforce the mortgage nonjudicially]."[27] This poses two questions: (1) whether a recording is required under the law to foreclose nonjudicially, and if so, (2) whether the security interest in this case was appropriately recorded. In light of further briefing on the first question, the court finds for Defendants and finds the second question moot.

Defendants MERS, FHLMC, Provident, and Woodall argue that the provision in question does not apply to nonjudicial foreclosure proceedings. Utah Code Ann. §70A-91-109(3)(b) states that Utah's commercial code, Section 9a, does not apply to the extent that "another statute of this state expressly governs the creation, perfection, priority, or enforcement of a security interest created by this state or a governmental unit of this state."[28] They further contend that the Utah Deed of Trust Act "expressly governs" the security interest in question. Defendants are correct. The provisions under Utah Code Ann. §57-1 provide for the recording, the notice, and sale of foreclosed property. It therefore seems clear that Section 57-1 expressly governs the enforcement of rights under a trust deed, and any reliance on Section 70A-9a-607 is improper.

---

[26] (Compl., ¶ 25).
[27] Utah Code Ann. § 70A-9a-607(2)-(2)(b) (emphasis added).
[28] (MERS's Brief Re: Applicability of Utah Code §70A-9a-607 to Nonjudicial Foreclosure Proceedings, 2-3) (quoting Utah Code Ann. § 70A-9a-109(3)(b)).

In his briefing, Plaintiff argues *against* his own position, stating that any nonjudicial foreclosure "would have to proceed according to the statutes on foreclosure. Chapter 9a of Title 70A governs only security transactions, and does not supplant general real property law."[29] In other words, the provision upon which Plaintiff bases his contention is, admittedly, misplaced. Accordingly, the court agrees with both parties and therefore finds for Defendants.

### ii. The Trust Deed Following the Sale of Debt

Plaintiff asserts that "[u]pon information and belief, the obligations on the Notes were pooled and sold by Lenders and/or a person or persons unknown as securities to numerous investors unknown."[30] Plaintiff cites Utah Code Ann. § 57-1-35: "The transfer of any debt secured by a trust deed shall operate as a transfer of the security therefor." Plaintiff contends that a sale of debt "creates a 'disconnect' between the Note and the original beneficiary of the trust deed, which ceases to be the current beneficiary or the owner of both the Note and trust deed."[31] In other words, Plaintiff's argument appears to be that when Defendants allegedly transferred the note for securitization, Defendants also lost possession of the trust deed and the authority to foreclose.[32] Thus, Plaintiff asserts that MERS had no authority to appoint Mr. Woodall as Substitute Trustee, and that Mr. Woodall in turn had no authority to foreclose on the disputed property.[33]

Although the parties interpret the statute differently, the court is persuaded by holdings from this district that this argument must be rejected.[34] Assuming *arguendo* that the Utah Code

---

[29] (Pl.'s Brief on Order of Sep. 2, 2010, 2).
[30] (Compl., ¶ 23).
[31] (Pl.'s Mem. in Resp. to MERS Mot. to Dismiss, 3).
[32] (Pl.'s Mem. in Resp. to Wells Fargo's Mot. to Dismiss, 5).
[33] (Compl., ¶¶ 48-49).
[34] It is worth noting that Plaintiff's reading of Utah Code Ann. § 57-1-35 treats the provision in isolation rather than in the appropriate context of selling a property after default. The preceding provisions, for example, include rules touching the sale of trust property by public auction (§ 57-1-27), payment by the purchaser of the bid to the trustee (§ 57-1-28), the disposition of the trustee's sale (§ 57-1-29), etc. These rules are meant to ensure that trustees are

provides for an automatic transfer of the beneficiary's rights under the trust deed with the sale of the note, there is still the question of MERS's contractual right to retain the power to act for the holder or holders of the note to institute foreclosure proceedings. Under the terms of the initial transaction, Plaintiff expressly acknowledged:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, **MERS (as nominee for Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property**; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.[35]

In *Burnett v. Mortgage Electronic Registration Systems, Inc.*, the court considered whether MERS had the authority to foreclose on the property and the authority to appoint a successor trustee.[36] In evaluating an almost identical provision, Judge Kimball found that "when Plaintiff defaulted on her contractual monthly payments, MERS had authority under the Deed of Trust to initiate foreclosure proceedings and to appoint Woodall as successor trustee. Upon [Plaintiff's] default in payments, MERS had authority to 'take any action' required of Lender, including the right to [appoint] Woodall trustee and the right to foreclose and sell the property."[37]

Plaintiff responds that *Burnett* "does not deal with the issue [of] whether rights originally accorded MERS are lost by transfer of the debt," but then offers nothing himself to suggest otherwise.[38] Specifically, Plaintiff offers no evidence or legal argument that MERS cannot contract for the right and power of foreclosure regardless of who holds the note, or the beneficial interest under the trust deed. Nor does Plaintiff demonstrate that such rights are actually "lost by

---

able to recover for lenders those monies that have become due and remain unpaid. Integral to this process is the assurance provided to prospective buyers that, in buying the debt at auction, they will have all rights and title to the security. This is precisely the focus of § 57-1-35. Whatever transactions occurred involving MERS outside of a post-default trustee's sale is not within the context and purpose of § 57-1-35. Plaintiff's argument involving this provision is erroneous and little more than a proof-text of the Utah Code.

[35] (Compl., ¶ 15) (emphasis added).
[36] *Burnett*, 1:09-cv-00069-DAK, 2009 U.S. Dist. LEXIS 100409 (D. Utah Oct. 27, 2009).
[37] *Id.*, at *11.
[38] (Pl.'s Mem. in Resp. to MERS's Mot. to Dismiss, 2).

transfer of the debt." Utah Code Ann. §57-1-35 does not address whether the parties can agree by contract to have someone other than the beneficial owner of the debt act on behalf of that owner to enforce rights granted in a trust deed.

With the trend of this district court being clear, Plaintiff points to a number of cases from courts outside this district to support his premise that the "splitting" of the note and the trust deed destroys the power to appoint a trustee and thereby foreclose. These cases are distinguishable, and in several instances have been explained by other courts in this district, which explanations this court adopts.[39] Particularly where the Plaintiff has failed to articulate a meaningful argument in explaining how these cases apply to the case at hand, the court need not address how each fails to sustain Plaintiff's contentions. That being said, it is important that several fundamental issues be clarified.

What California, Kansas, Missouri, Nevada, or any other state court has said on the matter is nothing more than a holding of how those courts have interpreted *their* statutes. Thus, even if the statutes were identical – and they are not – interpretations of those statutes are, at most, persuasive of how Utah courts may interpret Utah law. Additionally, many of the cases upon which Plaintiff relies specifically refer to the usage and practices of mortgages. Plaintiff fails to understand that, although similar, mortgages are legally different from trust deeds. As the Utah Code Annotated explains:

> Unlike a trust deed, a mortgage in Utah is not a title-conveying instrument. The Mortgagor retains legal title, and the mortgagee's interest is a lien on the property to secure payment of a debt. A trust deed is similar to a mortgage in that it is given as

---

[39] *See McGinnis v. GMAC Mortgage Corp.*, 2:10-cv-301-TC, 2010 U.S. Dist. LEXIS 90286, at *7-8 (D. Utah Aug. 27, 2010) (distinguishing a similar set of facts to those of this case with *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528 (Kan. 2009), which was not concerned with MERS's standing to foreclose, but whether MERS was an indispensable party who should have been allowed to intervene in a foreclosure action initiated by another Lender. Moreover, the court found that *Landmark* failed to recognize "the agency relationship between MERS and the lender that is created by the language in the Deed of Trust designating it as beneficiary.").

9

security for the performance of an obligation. However, a trust deed is a conveyance by which title to the trust property passes to the trustee.[40]

Some state courts have found that there is little if any difference between the two instruments. Missouri, for example, has long held that "a mortgage or deed of trust is a mere security for the debt, and the legal title remains in the mortgagor until condition broken [upon which] the legal title passes to the mortgagee . . . and there is no difference in that respect between a mortgage and a deed of trust."[41] But under Utah law, the distinction is clear. Reliance on such case law, which tends to conflate the functioning of a mortgage and trust deed, is improper. It is therefore erroneous to construe cases dealing with a mortgage as requiring the same result in a case dealing with a trust deed.[42]

There is no case from a Utah court that requires a conflation of a mortgage and a deed of trust. Nor is there anything in the statute that suggests that the power to exercise the rights granted to the lender named in the trust deed cannot be delegated to a nominee to act on the lender's behalf, or on behalf of the lender's successors and assigns, regardless of how many

---

[40] Utah Code Ann. § 57-1-19 n.1.
[41] *Hayden v. Burkemper*, 40 Mo. App. 346, 351 (Mo. Ct. App. 1890); *see also First Nat'l Bank of Butte v. Bell Silver & Copper Mining Co.*, 8 Mont. 32 (Mont. 1888) (stating "[m]ortgages containing powers of sale, and deeds of trust, to secure a debt due to a creditor, are substantially the same thing at law and equity. . . . A mortgage is a pledge or security for a debt . . . whether a simple mortgage . . . or a deed in trust . . . . Courts of equity look upon it as a mortgage."); *see also Schroeder v. Berlin Arcade Real Estate Co.*, 175 Wis. 79, 98 (Wis. 1921) (stating "[a] deed of trust in Wisconsin is a mere security for money advanced under the bond issue, and in legal effect is nothing more than a mortgage.").
[42] In contrast to such cases considering mortgages, the court notes that there are others that are substantially similar to the case at hand, both in terms of the facts and trust deed law. For example, in *Maxa v. Countrywide Loans, Inc.*, No. CV10-8076-PCT-NVW, 2010 U.S. Dist. LEXIS 72521 (D. Ariz. July 16, 2010), the plaintiff argued that MERS could not appoint the trustee because it never had ownership and possession of the Note. *Id*. at *9. Pointing to *Carpenter v. Longan*, 83 U.S. 271 (1872), the plaintiff argued that the note and the mortgage were inseparable, thus requiring that an "assignment of the note [carried] the mortgage with it." *Maxa*, 2010 U.S. Dist. LEXIS 72521 at *9. After distinguishing *Carpenter* on its facts, the court then noted that in Arizona, mortgages and deeds of trust "are distinct forms of real property liens." *Id*. at *10. The court held that because a trustee's sale is not an action to enforce the note, but rather an exercise of the power of sale upon default, the note did not need to be produced. *Id*. at *11. Lastly, the court found that where the plaintiff had conveyed the power of sale to the trustee and empowered MERS as the lender's nominee to exercise the lender's rights, there was no Arizona law that required the trustee or beneficiary to possess the note in order to exercise the power of sale granted by the deed of trust. *Id*. at *14. Because *Maxa* is quite similar to this case, the court adopts its reasoning and likewise rejects the "show me the note" argument. *See id*. at *13.

successors and assigns there may be. Nothing in law or logic supports that such a delegation would constitute a separation of the rights under the trust deed from the ownership of the note, even accepting Plaintiff's interpretation of Utah Code Ann. §57-1-35. Thus, there is no reason to conclude that MERS could not contract with Plaintiff and other parties to maintain the power to foreclose despite the conveyance of the ownership of the debt as long as MERS were to act on behalf of those parties who have the ultimate right to collect the debt. To rely upon cases outside of Utah that hold otherwise, for our purposes, is *non sequitur*.[43]

Finally, Plaintiff's argument completely ignores the fact that at the same time MERS appointed the substitute trustee, it also assigned all its beneficial interest in the First Trust Deed to Provident Funding.[44] Thus, to the extent that any claim could be based on the supposed discrepancy between the interests of the lender and the rights under the trust deed when MERS acquired those rights, that discrepancy was cured by the assignment of the beneficial interest. Plaintiff's contentions fail.

### iii. MERS Standing

Plaintiff cites a decision by the United States District Court of Nevada[45] to argue that MERS, without naming the beneficiary in the complaint or proving its agency relationship to the beneficiary,[46] cannot show standing as "a party in interest" under Rule 17 of the Federal Rules

---

[43] Interestingly, even if Plaintiff were in such a jurisdiction that accepted his theory that the note and trust deed cannot be separated, there is considerable doubt that he has any legal interest to the land in question having conceded default and effectuating the "condition broken."
[44] (Compl., ¶¶ 30-31; Ex. E, F).
[45] *Mortgage Electronic Registration Systems, Inc. v. Chong*, No. 2:09-cv-661-KJD-LRL, 2009 U.S. Dist. LEXIS 127500 (D. Nev. Dec. 4, 2009).
[46] It is rather odd that Plaintiff demands proof of an agency relationship here while content to assume that such a relationship exists for purposes of his First Cause of Action – Estoppel/Declaratory Judgment. Likewise, it is Plaintiff's allegation that the notes were securitized, which necessarily presumes that such a relationship exists between the investors and MERS. Plaintiff cannot freely allege factual assertions in one instance, and then successfully challenge their very foundation in the next.

of Civil Procedure.[47] This case is distinguishable in multiple ways. First, the district court for Nevada found that the agency relationship was "particularly important in the District of Nevada where the Local Rules of Bankruptcy Practice require parties to communicate in good faith regarding resolution of a motion for relief from stay before it is filed. The parties cannot come to a resolution if those with a beneficial interest in the note have not been identified and engaged in the communication."[48] Clearly, the case at hand does not turn on the local bankruptcy rules of Nevada. As such, it is no surprise that the court limited its holding "to the specific facts and procedural posture of the instant case."[49]

Second, what the court did *not* say is also important. The remaining section of Rule 17 states: "The following may sue in their own names without joining the person for whose benefit the action is brought," listing an executor, administrator, etc., and "a party with whom or in whose name a contract has been made for another's benefit . . . ."[50] MERS is undoubtedly "a party with whom or in whose name a contract has been made for another's benefit" as evidenced by the First Trust Deed, as explained above. This court is also satisfied that a fiduciary duty exists between MERS and any securitized holders as the nominee of the beneficiary to see that the debt, and therefore the debt holders' investment in the debt, is paid.[51] The responsibility to assure that the holders of the debt receive a return of their investment undoubtedly creates a "legally protected interest," and any default by the borrower would sufficiently harm that interest, thereby providing MERS standing in such a case.

Third, and most importantly, it is *Plaintiff* who has brought suit against MERS and named it as a defendant in this case. It makes no sense for Plaintiff to now assert or imply that

---

[47] Fed. R. Civ. P. 17(a)(1) (stating "[a]n action must be prosecuted in the name of the real party in interest.").
[48] *Chong*, 2009 U.S. Dist. LEXIS 127500, at *7-8.
[49] *Id*. at 9.
[50] Fed. R. Civ. P. 17(a)(1)(F).
[51] *See supra*, n.47.

12

MERS has failed to establish any element of standing or suggest that standing has anything to do with MERS's authority to foreclose.[52] MERS has standing in the present action and any contention to the contrary fails.

### iv. Recording by the Successor Trustee

Plaintiff's final contention was raised at the hearing on this motion. He asserts that Utah Code Ann. § 57-1-22(3)(a) supports his grounds for denying Defendants' motions. The provision states: "If not previously recorded, at the time of recording a notice of default, the successor trustee shall file for record, in the office of the county recorder of each county in which the trust property or some part of it is situated, the substitution of trustee."[53] Plaintiff has not suggested that the recording did not occur, but rather that Mr. Woodall was inappropriately appointed as trustee. In fact, Exhibit E attached to the complaint is a copy of the notarized Substitution of Trustee. In light of the finding that MERS had the authority to appoint Mr. Woodall as trustee, nothing in the complaint suggests that the substitution was recorded improperly. Plaintiff's argument is wholly without merit.

### B. Wells Fargo's Motion to Dismiss Claims Regarding the Wells Fargo Note

On a motion to dismiss, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."[54] However, "[i]f on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[55] Wells Fargo has included two affidavits from Elizabeth A. Ryan, testifying that Wells Fargo is the holder of the Wells Fargo Note and has not "sold, transferred, pooled or

---

[52] (Pl.'s Mem. in Resp. to MERS's Mot. to Dismiss, 3-4).
[53] Utah Code Ann. § 57-1-22(3)(a).
[54] *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).
[55] Fed. R. Civ. P. 12(d).

securitized the debt evidenced by the Note at any time."[56] The affidavit also evidences that Wells Fargo "is, and has always been, the beneficiary of the Note."[57] Thus, because "matters outside the pleadings [have been] presented . . . and not excluded by the court, the motion must [therefore] be treated as one for summary judgment under Rule 56."[58]

     A motion for summary judgment is granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[59] "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing . . . evidence that would support a jury verdict."[60] Plaintiff has offered nothing that disputes the evidence that Wells Fargo has proffered showing that it has never transferred the note. Moreover, Plaintiff has not submitted to the court an affidavit that he "cannot present facts essential to justify [his] opposition [to the motion]," under Rule 56(f).[61] Rather, Plaintiff simply states that he "is entitled, under Rule 56, FRCP, to depose Ryan, and to conduct further discovery into Wells Fargo's actual course of business with respect to this loan."[62] Such a statement is not sufficient. The Federal Rules are clear that an affidavit must be submitted to the court in order to proceed with a Rule 56(f) motion, but Plaintiff has not done so. As such, no evidence before the court demonstrates that the note was transferred by Well Fargo. Accordingly, there is no genuine issue for trial and Wells Fargo's motion for summary judgment is granted.[63]

---

[56] Second Ryan Dec., 2. (Dkt. No. 31).
[57] *Id.*
[58] Fed. R. Civ. P. 12(d).
[59] Fed. R. Civ. P. 56(c)(2).
[60] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).
[61] Fed. R. Civ. P. 56(f).
[62] (Pl.'s Mem. in Resp. to Wells Fargo's Mot. to Dismiss, 4).
[63] *See Anderson*, 477 U.S. at 249 (internal citations omitted).

## IV. THIRD CAUSE OF ACTION: QUIET TITLE

In addition to the previous claims, Plaintiff prays that the court find that "the Trust Deeds are not a lien against the subject property," and that the trust deed of record should be released and title quieted for Plaintiff.[64] "To succeed in an action to quiet title to real estate, a plaintiff must prevail on the strength of his own claim to title and not the weakness of a defendant's title or even its total lack of title."[65] Plaintiff, however, does the exact opposite. Plaintiff attacks any claim of title by Defendants, asserting "[t]he failure of [Defendants] to retain any interest in the obligations under the Notes voided any title or power they might have under the Trust Deeds, and rendered the Trust Deed unenforceable by them."[66] This is not sufficient to succeed under a quiet title action. In any event, Plaintiff is still in default on the loan and it is this that clouds any title owned by Plaintiff. Therefore, the motion to dismiss the quiet title action is granted in favor of all Defendants.

## V. FOURTH CAUSE OF ACTION: REFUND, FEES, AND COSTS

Finally, Plaintiff claims that "Defendant Beneficiaries' and defendant Trustee's pretenses of authority to foreclose, or attempt to foreclose, under the Trust Deeds were fraudulent."[67] Additionally, Plaintiff states that "Defendant Beneficiaries' and defendant Trustee's assertions to the Court herein that they hold and are entitled to enforce the obligations of the Notes would constitute a fraud upon the Court, subjecting defendants to sanctions and imposition of fees and costs under §78-5-825, U.C.A. (1953)."[68] As such, Plaintiff demands "fees and costs, together with a reasonable attorney's fee . . . and to reimburse to plaintiff unnecessary fees and charges

---

[64] (Compl. 11, ¶ 3).
[65] *Collard v. Nagle Constr.*, 2002 UT App 306, ¶18, 57 P.3d 603 (quoting *Church v. Meadow Springs Ranch Corp.*, 659 P.2d 1045, 1048-49 (Utah 1983)).
[66] (Compl., ¶ 54).
[67] (Compl., ¶ 59). Despite Plaintiff's revision that his Fourth Cause of Action "does not assert fraud," it clearly does. (Pl.'s Mem. in Resp. to Wells Fargo's Mot. to Dismiss, 6).
[68] (Compl., ¶ 60).

15

under the Notes and Trust Deeds."[69] As dubious as they are, the court need not consider the merits of Plaintiff's argument. Where the other claims have been dismissed, any possible remedy is likewise extinguished, and this cause of action against all Defendants is dismissed.

## CONCLUSION

For the foregoing reasons:

1. Defendants' Motions to Dismiss Plaintiff's First, Third, and Fourth Causes of Action are GRANTED with prejudice.

2. Defendants MERS, Provident Funding Associates, James H. Woodall, and Federal Home Loan Mortgage Corporation's Motions to Dismiss Plaintiff's Second Cause of Action are GRANTED with prejudice.

3. Wells Fargo Bank's Motion for Summary Judgment on Plaintiff's Second Cause of Action is GRANTED.

DATED this 19th day of October, 2010.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge

---

[69] (Compl., ¶ 61).